[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON THE PLAINTIFF'S MOTION TO REARGUE
The plaintiff has filed a motion to reargue the alimony award of the court's November 12, 1998 order of dissolution. During the trial of this case, a significant dispute between the parties was whether alimony to the wife should be based on the husband's present income (approximately $120,000 a year) or on his earning capacity. The court was not convinced that either party's proposed order regarding alimony addressed this issue in a sufficiently adequate or fair way. The court addressed this dispute by ordering the husband to pay $3,333.34 a month in alimony to the wife, and in addition to this amount, an amount equal to 10% of his yearly gross income that equaled or exceeded $150,000. Gross income was defined as the amount indicated on line 22 of the husband's federal income tax return.
Pursuant to the plaintiff's motion to reargue, the court has agreed to reconsider the specifics of the alimony formula based on the husband's gross income. Both parties make good points on this issue: the husband' primary argument is that the use of line 22 of his federal tax return as the basis for the formula would CT Page 4858 include items, such as investment income and capital gains, that could operate to trigger the additional alimony payment without there being any increase in his salary or earnings. The husband argues that this consequence is particularly inequitable since the investment income would be derived from his share of the marital assets divided as part of the court's property division orders. Thus, the husband requests that the formula be based only on income from personal services or employment and not from passive or investment income. On the other hand, the wife cogently notes that at least in part, the court's $30,000 cushion (the difference between the husband's present income of $120,000 and the gross income of $150,000 triggering the payment of the additional 10% alimony) addresses this concern, and that under his proposal, the husband, in his line of work, could channel his earnings away from the alimony base through, for example, stock options, capital gains or dividends. The wife's position is that the courts order should remain unchanged or if the gross income definition is changed as requested by the husband, then the percentage should also change from 10% to 33%.
As the parties appreciate, these issues could be addressed in a number of different ways including a change of the "cushion", a change of the 10% rate, a change in the income sources on which the formula is based, or a change of some combination of these factors. The obvious goal is to reach a result that makes sense under the circumstances, taking into consideration the factors of Section 46b-82 of the General Statutes and particularly taking into consideration the parties' needs and abilities.
The court has again considered the evidence, the parties' post-trial stipulation regarding the assets subject to distribution, the parties' proposed orders, this court's property divisions, and the court's alimony award, and the court is persuaded that on the facts of this particular case, the husband's position, on balance, is more persuasive. Although the husband may have opportunities to acquire compensation for services that may not be reflected in his base salary, these parties will have substantial investment and interest income from the court ordered property divisions, and under the circumstances here, the husband's income from these sources should not operate so prominently to cause the payment of additional alimony. In deciding to award the wife additional alimony in light of the husband's earning capacity, the court heavily relied on the husband's base salaries in recent years. A fair alimony award may be achieved by a continued emphasis of the husband's base CT Page 4859 earnings or salary, especially since the additional alimony is based on his gross earnings and with a downward adjustment of the previously contemplated cushion.
In his post-trial filings, the husband has also raised an issue regarding the involuntary liquidation of certain assets that occurred after the trial and how these assets should be divided under the court's order. The court agrees with the wife that this issue is essentially moot primarily because the parties agree that the net proceeds of these assets, namely the husband's severance pay from Trophy Holding, should be divided as a marital asset. Thus the court orders that the net proceeds received by the husband as severance pay from Trophy Holding be divided pursuant to the court's order that the parties equally divide their marital assets. The net proceeds shall take into consideration the payment of the taxes associated with the husband's receipt of these funds, but shall not take into consideration attorney fees. The court has not received evidence about any such attorney fees or their reasonableness.
Therefore, for all the foregoing reasons, the plaintiff's motion to reargue is hereby granted to the following limited extent. Paragraph 4 of the courts Memorandum of Decision of November 12, 1998, is hereby vacated and replaced by the following:
4. The husband shall pay alimony to the wife in the amount of $40,000 per annum payable monthly (or $3,333.34 a month). In addition to this alimony, the husband shall pay the wife additional alimony based on his "Compensatory Income". Compensatory Income is defined as all that income which is derived from his work or employment, and shall include the income reported on the following lines of the Federal Tax Form 1040 or any equivalent lines: Line 7 (wages, salaries, tips, etc.) and Line 12 (business income); together with any income earnings, or bonuses from employment or personal services, as compared to investment income, reported on the Line 17 (royalties, partnerships, corporations), and Line 21 (other income).
Beginning April 30, 1999 and for applicable years thereafter, the husband shall complete his federal income tax return for the previous year, and if his Compensatory Income equals or exceeds $140,000, he shall pay the wife 10% of this Compensatory Income in 12 equal, monthly installments over the next year beginning in June of that year in addition to paying the $3,333.34 a month. CT Page 4860
By April 30th of each year, the parties shall exchange individual income tax returns. The husband's obligation to pay alimony shall terminate upon the death of either party, the wife's remarriage, or the wife's cohabitation as defined by statute.
April 14, 1999
So ordered.
STEVENS, J.